IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DERRICK D. FIELDS                                                                                                  PLAINTIFF

v.                                         Civil No. 4:22-cv-04044

CORRECTIONAL OFFICER DARNEQUIOUS EVANS,
Miller County Detention Center (MCDC); CORRECTIONAL
OFFICER KAMERON DOCKERY, MCDC; NURSE STEVEN
KING, Southern Health Partners, Inc. (SHP); NURSE LISA
DAVIDSON, SHP; NURSE CHELSEY FOSTER, SHP; and
CORRECTIONAL OFFICER HICKERSON, MCDC                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Derrick D. Fields ("Fields"), filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Fields is currently incarcerated at the North Central Unit of the Arkansas Division of Correction. On October 13, 2021, while Fields was incarcerated in the Miller County Detention Center ("MCDC"), Fields was attacked by fellow inmate Antony Brown. Fields contends the Defendants failed to protect him from attack by Brown and failed to provide him with adequate medical care. Fields has sued the Defendants in both their individual and official capacities.

Pending before the Court is Fields' Motion For Summary Judgment (ECF No. 39); the Motion for Summary Judgment (ECF No. 52) filed by Nurse King, Nurse Davidson, and Nurse Foster (collectively "the Medical Defendants");[1] and the Motion for Summary Judgment (ECF

---

[1] The Medical Defendants are employed by Southern Health Partners, Inc. ("SHP"). The medical care contractor for the MCDC. *See e.g.,* (ECF No. 54-2 at 1)(Affidavit of Nurse King).

1

No. 62) filed by Correctional Officer Evans, Correctional Officer Dockery, and Correctional Officer Hickerson (collectively "the County Defendants"). Responses have been filed and the Motions are ready for decision. The Honorable Susan O. Hickey, Chief United States District Judge, referred the case to the undersigned in accordance with 28 U.S.C. § 636(b)(1) and (3) for the purpose of making a Report and Recommendation on the pending Summary Judgment Motions.

## I. BACKGROUND

Fields was booked into the MCDC on September 22, 2021, on pending criminal charges. (ECF No. 54-1 at 1).[2] During a prior incarceration in July of 2021, an admission data/history and physical form was completed. *Id.* at 2. Fields' current medical conditions were noted to be head trauma, seizures, and high blood pressure. *Id.* Note was also made that he had received counseling and/or outpatient treatment for mental health issues. *Id.*

On October 13, 2021, Fields was assaulted by fellow inmate Anthony Brown. (ECF No. 61-2 at 1). At the time of the attack, Fields states Officer Hickerson was serving lunch and looking through the window. (ECF No. 40 at 4).[3] Fields indicates Officers Dockery and Evans were working the same shift and neither responded. *Id.*

Sergeant Golden wrote the following incident report: "On 10-13-21 at approx. 1045 I Sgt Golden received a request via Smart Jail Mail from inmate Fields, Derri[c]k about him being assaulted by another inmate." (ECF No. 61-2 at 2). Sergeant Golden reviewed the camera

---

[2] All citations to the record are to the CM/ECF document and page numbers.
[3] Allegations in a verified complaint are to be considered on summary judgment. *See e.g., Roberson v. Hayti Police Dep't.,* 241 F.3d 992, 994 (8th Cir. 2001)("verified complaint is the equivalent of an affidavit for purposes of summary judgment").

2

footage and stated "it appeared on Wednesday, 10-13-21 at approx. 1130 inmate Brown, Anthony pushed inmate Fields, Derrick in an attempt to get him to fight. He pushed him again later. Inmate Brown, Anthony has been rolled up." *Id.* No witnesses were listed. *Id.*

By declaration, Fields says Brown "slapped" and "shoved him." (ECF No. 58 at 3). Fields indicates he felt pain in his left side and his rib cage was bruised following the incident. *Id.* at 2-3. Fields maintains he sought and was denied medical care.[4] *Id.* In fact, he asserts he complained every day for a month about the pain. *Id.* at 2.

According to the affidavit of Jail Administrator Al Landreth, in accordance with MCDC policy because no serious injuries were noted to exist, the video of this incident was not designated for retention.[5] (ECF No. 61-1 at 3). Fields maintains the video would have provided key evidence necessary to establish his claims. (ECF No. 48 at 1 (video would show Defendants were aware of risk to safety)); (ECF No. 56 at 1 (video is "the most key piece of evidence")).

Fields submitted medical requests complaining about headaches as a result of the attack and the need to see someone regarding his mental health. (ECF No. 40 at 8 & 9)(ECF No. 54-1 at 7, 11 & 36). On November 23rd, Fields mentions for the first time in his medical requests

---

[4] In his summary judgment response, Fields indicates that following the attack he was moved to segregation without a disciplinary being issued or a hearing being held. (ECF No. 58 at 4-5). This issue was not raised in Fields' Amended Complaint and will not be addressed here for the first time. *See e.g., Gilmour v. Gates, McDonald, and Co.,* 382 F.3d 1312, 1314-15 (8th Cir. 2004)(Liberal pleading standard for complaints "does not offer plaintiff an opportunity to raise new claims" or "amend [his] complaint through argument in a brief opposing summary judgment"). Additionally, to the extent Fields claims entitlement to injunctive relief, his transfer mooted these claims as he is no longer subject to the same conditions. *Smith v. Hundley,* 190 F.3d 852, 855 (8th Cir. 1999); (ECF No. 49 at 3).

[5] It is difficult to fathom why the video was not retained when Fields had already advised officials that he would be filing a lawsuit over this incident.

having a bruised ribcage.[6] (ECF No. 40 at 10). In addition to these medical requests, Fields submitted numerous grievances including those about the attack, the failure to provide safe housing, the failure to separate state and federal inmates, and his need for medical attention.[7] (ECF No. 61-4 at 82, 87-91, 94, 100, 165-66 & 172) (ECF No. 40 at 11, 13, 17 & 19-20).

On September 22nd, Fields was prescribed Tylenol 1000 mg twice a day for seven days. (ECF No. 54-1 at 4). On October 1st, a CT scan of his "left inguinal groin" was ordered; as well as a follow-up appointment with another doctor, and he was prescribed Ibuprofen 800 mg, twice a day.[8] *Id.* An EKG (electrocardiogram) was ordered on November 10th and a prescription entered for Tylenol 1000 mg, twice a day, for ten days. (ECF No. 54-1 at 5). The following day, Fields was sent to the emergency room at Wadley Regional Medical Center for evaluation. *Id.* Fields was determined to have a muscle strain of his anterior chest wall. *Id.* at 33. He was given a bottom bunk pass for two weeks and placed on the list to see the doctor. *Id.* at 4.

On November 29th, Nurse Foster noted that Fields was complaining of coughing up blood, shortness of breath, dizziness, and headache. (ECF No. 40 at 14). When asked to cough into a napkin, Fields stated he could not do so at that time. *Id.* Nurse Foster noted: [l]ung sounds clear bilateral, respirations even and unlabored;" and Fields had a "regular heart rhythm." *Id.* Fields was prescribed Tylenol 500 mg, twice a day, for fourteen days and daily blood pressure checks. *Id.*

---

[6] Not all medical requests submitted by Fields are mentioned. The requests not clearly related to the issues in this lawsuit are omitted.
[7] Not all grievances submitted by Fields are mentioned. The grievances not clearly related to the issues in this lawsuit are omitted.
[8] Other records indicate Fields had a "knot" in his groin. (ECF No. 54-1 at 12); (ECF No. 54-2 at 1).

On December 3rd, Fields was seen and again diagnosed with chest wall pain. (ECF No. 54-1 at 37). The orders for Tylenol and Ibuprofen were discontinued and he was prescribed Mobic[9] 7.5 mg, twice a day, for ten days. *Id.*

On December 24th, Fields was prescribed Ibuprofen 800 mg, twice a day, for seven days, on an as needed basis. (ECF No. 54-1 at 5). On December 27th, the order was changed to Ibuprofen 800 mg, twice a day, for fourteen days. *Id.* at 6. On January 12, 2022, Fields was prescribed Ibuprofen 800 mg, twice a day, for thirty days. *Id.* On February 9th, Fields was prescribed Ibuprofen 800 mg, twice a day, for thirty days, and Tylenol 1000 mg, twice a day. for thirty days. *Id.*

Medical administration records indicate Fields began receiving Tylenol twice a day on September 23rd. (ECF No. 54-1 at 38). During the months of October and November, Fields received Ibuprofen twice a day. *Id.* at 39-40. Additionally, from November 11th to the 20th, Fields also received Tylenol twice daily. *Id.* at 40. In December, Fields received Tylenol and Ibuprofen until December 3rd when he began receiving Mobic (meloxicam) through the 12th. *Id.* at 41. Fields began receiving Ibuprofen again on December 24th. *Id.* at 41-42. In January of 2022, except for a two-day gap, Fields received Ibuprofen twice a day. *Id.* at 43. In February, Fields received Ibuprofen and/or Tylenol until the 13th. *Id.* at 44.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[9] A non-steroidal anti-inflammatory drug (NSAID). (ECF No. 54-2 at 2).

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). Here, Defendants clearly acted under color of state law. The sole question is whether the Constitution was violated. Having narrowed our focus, the Court turns to an examination of the pending motions for summary judgment.

### A. Fields' Motion for Summary Judgment

Fields contends he is entitled to judgment in his favor on both the failure-to-protect claim and the denial of medical care claim. He argues the County Defendants should have housed him separately from a federal inmate who was violent. Fields contends he was not a violent inmate. Further, he maintains he was denied adequate medical care by both the County Defendants and the Medical Defendants. He states he has submitted his facts and is entitled to a ruling in his favor.

Both the County Defendants and the Medical Defendants respond that Fields has failed to assert any facts that he contends are undisputed and merely relies on conclusory allegations. (ECF Nos. 46 & 47). All Defendants maintain that Fields has not properly supported his summary judgment motion in accordance with Rule 56(c)(1) of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the Eastern and Western Districts of Arkansas. *Id.* Fields attempts to cure these deficiencies in his replies (ECF Nos. 48-50).

#### 1. Failure-to-Protect

"Because being subjected to violent assault is not 'part of the penalty that criminal offenders [must] pay for their offenses,' *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), '[t]he Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners.'" *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (quoting *Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998)) (cleaned up). For pretrial detainees, this duty arises under the Due Process Clause of the Fourteenth Amendment. *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007). However, the Eighth Circuit applies the Eighth Amendment standard to claims brought by both pretrial detainees and convicted inmates. *Chavero-Linares v. Smith,* 782 F.3d 1038, 1041 (8th Cir. 2015).

Prison officials must "take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832. However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

To prevail on a failure to protect claim, Fields must establish: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted).

The first prong is an objective requirement to ensure the deprivation of a constitutional right is sufficiently serious. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). "The deprivation is objectively, sufficiently serious, under the first requirement when the official's failure to protect resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm." *Id*. (cleaned up).

The second prong, however, is subjective, requiring Fields to show the named official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Holden*, 663 F.3d at 341 (quoting *Farmer*, 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007).

Fields has demonstrated an understanding of both the objective and subjective prongs of a failure-to-protect claim. However, he does not support his claim with any evidence other than his own beliefs and his conclusory statements. While Fields maintains that Brown was a dangerous violent inmate with mental problems, Fields fails to provide any support for these statements.

8

Fields provides no evidence Brown: was known to be a violent, volatile inmate, had attacked any other inmates, or suffered any mental illness which increased his propensity for violence;[10] Brown had argued with Fields or threatened him or other inmates; either Fields or Brown had been in protective custody or in a restrictive status such as administrative segregation; Fields had advised the County Defendants that Brown was Fields' enemy, had threatened him, or done anything which would have provided reason to suspect Brown would attack Fields. Fields does assert that he asked Captain Adams for a safer housing assignment; however, this by itself is insufficient to establish that the named County Defendants ignored an excessive risk to Fields' health or safety.

There is no evidence the County Defendants had any prior notice an attack was likely to occur. The only evidence Fields provides regarding Brown's propensity toward violence is Fields' own declaration in which he states that when Brown was removed from the pod he "yelled violently" that he "should have finished me." (ECF No. 58 at 2-3). Fields also argues Brown continued to act violently in Max D pod. *Id.* These actions occurred after the attack and cannot support his failure-to-protect claim.

Fields provides no evidence that the attack against him was anything but a surprise attack. *See Vandevender v. Sass,* 970 F.3d 972, 976 (8th Cir. 2020). By their very nature, surprise attacks cannot meet the subjective prong of a failure-to-protect claim. *Patterson v. Kelley,* 902 F.3d 845, 851-52 (8th Cir. 2018). In short, Fields has not shown he is entitled to summary judgment on this claim.

---

[10] Fields' own declaration and statement of facts contain the assertions that Brown was violent and was a mental patient. (ECF No. 58 at 2 & 7). The assertions are not supported by any exhibits.

## 2. Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *See e.g., Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).[11] Although Fields was a pretrial detainee and his claim is brought under the Fourteenth Amendment, the Eighth Circuit has continually applied the Eighth Amendment's deliberate indifference standard to claims brought by pretrial detainees. *See e.g., Carpenter v. Gage,* 686 F.3d 644, 650 (8th Cir. 2012). To prevail on his claim, Fields must prove that each Defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: '[Fields] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Fields must show he "had been diagnosed by a physician as requiring treatment" or had an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted). Following the attack, Fields

---

[11] In *Briesemeister v. Johnston,* 827 Fed. Appx. 615, 616 n.2 (8th Cir. 2020), the Eighth Circuit rejected the argument that *Kingsley v. Hendrickson,* 576 U.S. 389 (2015) objective reasonableness standard which was applied to excessive force claims brought by pretrial detainees under the Due Process Clause had altered the standard applicable to denial of medical care claims brought by pretrial detainees.

10

contends he suffered from headaches, a bruised ribcage, and an increase in his need for mental health care.[12]

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).

Assuming for purposes of Fields' Motion for Summary Judgment that he suffered from an objectively serious medical condition, the fact remains none of the named County Defendants are on the medical staff. There is no evidence they ignored an acute or escalating situation. "Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). Fields has not shown he is entitled to summary judgment on his claim against the County Defendants.

With respect to the Medical Defendants, Fields at most has shown there was a delay in his

---

[12] Fields argues he was "slapped" in the head. (ECF No. 58 at 10). However, this statement or description of the attack does not appear in Fields' declaration or in any of the medical requests or grievances he submitted.

receipt of medical care. Specifically, he contends he received no medical care for his bruised ribcage until he was seen at Wadley Regional Medical Center on November 11, 2021. "Because [Fields'] deliberate-indifference claim is based on a delay in medical treatment, we measure the objective seriousness of the deprivation . . . by reference to the *effect* of delay in treatment." *Jackson v. Riebold,* 815 F.3d 1114, 1119 (8th Cir. 2016)(cleaned up). "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id.* at 1119-20 (cleaned up). Fields has provided no such evidence and is not entitled to summary judgment against the Medical Defendants.

For the reasons stated above, Fields' Motion for Summary Judgment (ECF No. 39) should be denied in its entirety.

### B. Medical Defendants' Motion for Summary Judgment

The Medical Defendants contend they are entitled to summary judgment for the following reasons: (1) Fields suffered from no objectively serious medical need; (2) they were not deliberately indifferent to Fields' medical needs; and (3) there is no basis for an official capacity claim.

#### 1. Objectively Serious Medical Need

While Fields alleges he suffered from headaches and a bruised ribcage in the altercation with Brown, the Medical Defendants maintain that Fields suffered neither. The Medical Defendants point out that Fields had a pre-existing head injury for which he was being treated with pain relievers. Further, they argue the diagnosis of muscle strain to his anterior chest wall did not come until a full month after the altercation.

Review of Fields' medical requests indicate that he only mentioned he was suffering from

headaches as a result of the attack until his November 23rd request when he first mentioned a bruised ribcage. (ECF No. 40 at 8 & 10); (ECF No. 54-1 at 7 & 10). This was after his trip to Wadley Regional Medical Center. However, Fields also indicates he suffered mentally as a result of the attack. Fields began asking to see mental health on October 24th. (ECF No. 54-1 at 7). Similarly, he started mentioning his need for mental health care in his grievances on October 20th. (ECF No. 40 at 19).

For purposes of this Motion, the Court will assume Fields' ongoing headaches, bruised ribs or chest wall pain, and an increased need for mental health services as a result of the attack, when viewed in the light most favorable to Fields, demonstrates the existence of an objectively serious medical. Fields was prescribed over-the-counter pain relievers, was sent to the hospital, and was seen by the mental health nurse of multiple occasions.

**2. Deliberate Indifference**

This is the subjective component and requires Fields to prove that each named Defendant had a "sufficiently culpable state of mind;" in other words, he or she actually knew of the substantial risk of serious harm and failed to respond reasonably to it. *Nelson v. Shuffman,* 603 F.3d 439, 446-47 (8th Cir. 2010). "Liability for damages for a federal constitutional tort is personal; so each defendant's conduct must be independently assessed." *Wilson v. Northcutt,* 441 F.3d 586, 591 (8th Cir. 2006).

In his own motion and in his response to the Medical Defendants' Motion, Fields does not separately address the conduct of each Defendant; instead, he merely asserts the Medical Defendants denied him adequate medical care. With respect to Nurse Davidson, Fields' medical requests and grievances mention her on the following occasions:

13

(1) Nurse Davidson responded to Fields' medical request dated October 24th. In the request, Fields stated he needed to know about a CT scan; he was having headaches since the attack; and needed to see mental health. Nurse Davidson noted Fields had an upcoming appointment but she was not allowed to provide him with details. He was told to put in a sick call to be added to the mental health nurse's list. Nurse Davidson stated that per the video surveillance, Brown did not have contact with Fields' head or neck area. Finally, Nurse Davidson stated Fields was on Ibuprofen which was a general pain management medication. (ECF No. 54-1 at 7).

(2) On November 22nd, Fields filed a grievance stating Nurse Davidson was denying him medical treatment which was causing him to be "sicker." The December 8th response to this grievance reported Fields had been seen by a doctor since he filed the grievance. (ECF No. 40 at 12).

(3) On November 22nd, Fields filed a second grievance stating that Nurse Davidson failed to provide him with his medication. (ECF No. 61-4 at 97).

(4) On December 19th, Fields filed a grievance stating his mental health was "bad" and his blood pressure had been high on December 14th. Nurse Davidson responded that Fields' blood pressure had not been high; he was being treated for high blood pressure; and he had been seen by the mental health nurse every time she had been at the facility since October. (ECF No. 40 at 22).

Fields' medical records indicate he was provided with a variety of over-the-counter pain relievers throughout his incarceration. He was seen at the hospital on November 11th for his complaints of chest pain and diagnosed with muscle strain of his anterior chest wall. Fields first complained of suffering a bruised ribcage as a result of the attack after the November 11th diagnosis. On December 3rd, Fields was seen by the facility doctor, diagnosed with chest wall pain, and Fields' prescription was changed from Tylenol and Ibuprofen to Mobic for ten days. After the ten days, Fields was again given Ibuprofen and/or Tylenol for the remainder of his incarceration at the facility. On December 30th, Fields indicated his chest wall pain was aggravated by the hard rack he slept on and the tossing and turning he did due to his inability to sleep. Fields was also being seen on a regular basis by the mental health nurse.

As previously discussed, the deliberate indifference standard imposes a significant evidentiary burden on plaintiffs. It requires more than evidence of negligence, or even gross negligence, and a prisoner's mere disagreement with the course of care is not a sufficient evidentiary basis to prove deliberate indifference. *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). Instead, deliberate indifference "requires proof of a reckless disregard for a known risk." *Moore v. Duffy,* 255 F.3d 543, 545 (8th Cir. 2001). Based on the summary judgment record, no reasonable juror could that Nurse Davidson exhibited deliberate indifference to Fields' serious medical needs.

The only interaction Fields had with Nurse Foster which is noted in the summary judgment record occurred on November 29th. Fields was complaining of coughing up blood, shortness of breath, dizziness, and headache. (ECF No. 40 at 14). Nurse Foster asked his to cough into a napkin so she could see the blood. *Id.* Fields was unable to do so at that time. *Id.* Nurse Foster examined Fields and then prescribed Tylenol 500 mg, twice a day, for fourteen days and daily blood pressure checks. *Id.* Based on this record, there is no genuine issue of material fact as to whether Nurse Foster exhibited deliberate indifference to Fields' serious medical needs.

Interactions with Nurse King are far more numerous in the record. *See e.g.,* (ECF No. 54-1 at 10 & 36); (ECF No. 40 at 10-11, 17 & 19-20); (ECF No. 61-4 at 113, 116, 165-66 & 171). Fields complained Nurse King exaggerated the amount of medical care Fields was receiving; told Fields to quit complaining about his chest wall pain; was biased, rude, and made false allegations against Fields; made inappropriate comments; failed to properly consult with the doctor; and handled medication improperly on one occasion. Fields also stated he did not feel safe around Nurse King.

Clearly, Nurse King's interactions with Fields exhibited a lack in professionalism and a distain for Fields and/or inmates in general—an extremely unfortunate circumstance. However, the medical record establishes Fields was receiving medical treatment. Although the treatment was not up to the standards desired by Fields or given as quickly as Fields desired, there is nothing in the record suggesting that any delay in treatment adversely affected Fields' prognosis for his headaches or chest wall pain. The named Medical Defendants were not personally involved in the provision of mental health care to Fields. In short, there is no genuine issue of material fact as to whether Nurse King exhibited deliberate indifference to Fields' serious medical needs.

### 3. Official Capacity Claim

An official capacity claim is considered a claim against the employing governmental entity, here, SHP. *Crawford v. Van Buren Cnty.,* 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to an entity if the violation resulted from (1) an 'official entity policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 699 (8th Cir. 2016)(citations omitted).

In his Amended Complaint (ECF No. 40) when Fields was asked to describe the custom or practice that he believed caused the violation of his constitutional rights, he responded by merely stating he suffered pain as a result of the attack and had to be transported to the hospital where he was diagnosed with a bruised ribcage. This falls far short of the showing necessary to establish official capacity liability. Further, without a constitutional violation by the individual Medical Defendants, the employing entity may not be held liable. *Lombardo v. City of St. Louis,* 956 F.3d 1009, 1015 (8th Cir. 2020).

### C. County Defendants' Motion for Summary Judgment

The County Defendants move for summary judgment on the following grounds: (1) Fields did not exhaust his administrative remedies; (2) there is no evidence they failed to protect Fields from attack; (3) they are entitled to qualified immunity; (4) there is no basis for official capacity liability; and (5) they were not deliberately indifferent to Fields' serious medical needs.

1. **Exhaustion of Administrative Remedies**

The County Defendants maintain Fields did not specifically grieve the October 13th attack or any of the allegations contained in his complaint. While Fields does mention the attack in grievances, the County Defendants point out he does not identify any employe, any failure to act or failure to protect by any employee, or any allegations against any county official or the MCDC. In short, they maintain Fields' grievances fail to satisfy the requirements of the grievance policy.

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Specifically, section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a)

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not per se inadequate simply because an individual later sued was not named in the grievances." *Id*. at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system

17

to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

With respect to the content necessary in a grievance, the MCDC grievance procedure provides: "it will be the responsibility of the Inmate to present only specific facts and circumstances directly relating to the complaint. The Inmate should be brief and concise, stating only one issue per form." (ECF No. 68 at 5-6). Nowhere in the grievance procedure is the inmate directed to name the individuals involved, the theory of liability he is asserting, or provide any other details.

Fields' initial grievance was filed on October 13th and provides:

> on this day of 10-1321 an altercation occurred i was brut[a]ly attac[k]ed by federal inmate and its all caught on audio and video this an act that housing fed. inmate and state inmates tog[e]ther lead to fed major law suit and he is mental health i informed you all of such act and i will be pu[r]suing major law suit 1983 and it on video and audio shows clearly what happen this is not no game still im at risk an im make sure charges be filed on major fed charges and grand jury forward to warden

(ECF No. 61-4 at 82). Given the lack of concrete specific requirements in the MCDC's grievance procedure, Fields' October 13th grievance meets its requirement that the inmate present the "specific facts and circumstances" related to the complaint. The County Defendants are not entitled to summary judgment on failure to exhaust grounds.

2. **Failure-to-Protect Claim**

The essential elements of this claim were set forth above in connection with Fields' Motion for Summary Judgment and will not be repeated here. Suffice it to say there is nothing in the summary judgment record to suggest the attack against Fields was anything but a surprise attack. *See Vandevender v. Sass,* 970 F.3d 972, 976 (8th Cir. 2020). By their very nature, surprise attacks

cannot meet the subjective prong of a failure-to-protect claim. *Patterson v. Kelley,* 902 F.3d 845, 851-52 (8th Cir. 2018). The County Defendants are entitled to summary judgment on this claim.

### 3. Qualified Immunity

Furthermore, having found that the facts do not make out a constitutional violation, the County Defendants are entitled to qualified immunity on this claim. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### 4. Official Capacity Liability

Having found no constitutional violation on the part of any of the individual officers of the MCDC, there can be no official capacity liability. *Lombardo,* 956 F.3d at 1015. The County Defendants are entitled to summary judgment on this claim.

### 5. Denial of Medical Care Claim

The essential elements of this claim were set forth above in connection with Fields' Motion for Summary Judgment and will not be repeated here. There is no evidence in the summary judgment record that any of the County Defendants ignored an acute or escalating situation. "Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). The County Defendants are entitled to summary judgment on this claim. Furthermore, having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity on this claim. *See, e.g., Krout*, 583 F.3d at 564.

## IV.  CONCLUSION

For the reasons discussed above, the undersigned recommends that:

- Fields' Motion for Summary Judgment (ECF No. 39) be **DENIED;**

- The Medical Defendants' Motion for Summary Judgment (ECF No. 52) be **GRANTED and all claims against them be dismissed with prejudice;** and

- The County Defendants' Motion for Summary Judgment (ECF No. 61) be **GRANTED and all claims against them be dismissed with prejudice.**

Adoption of this report and recommendation will **DISMISS the case in its entirely WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of March 2023.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE